IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16CV611

| | | |
|---|---|---|
| SYNERGY INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| UNIQUE PERSONNEL CONSULTANTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court upon Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. The motion is fully briefed and ripe for disposition.

## I. Factual background

Plaintiff Synergy Insurance Company ("Synergy") is a Charlotte, North Carolina insurance company that provides workers compensation insurance to employers. Synergy's operations and personnel are almost exclusively located in Charlotte. Defendant Unique Personnel Consultants, Inc. ("UPC") is an Illinois corporation that offers staffing services in Illinois and Indiana. It has no physical presence in North Carolina.

Synergy has submitted the Affidavit of its Chief Financial Officer, Scott Grant, in support of its argument that personal jurisdiction exists over UPC. Mr. Grant's Affidavit shows the following: In 2014, through its agent Assurance Agency, UPC first contacted Synergy to inquire about obtaining workers compensation insurance coverage for the individuals UPC employed through its employment staffing agency. (Grant Aff. ¶ 5.) UPC's employees, including its President, participated in these negotiations. (*Id*. at ¶ 7.) UPC provided information to Synergy's underwriting personnel, all of whom are located in North Carolina, to allow Synergy to conduct

1

risk assessment and determine pricing for the workers compensation insurance. (*Id*. at ¶ 6.) During the negotiation process, Synergy provided UPC with documents and information indicating that Synergy's office was located in Charlotte, North Carolina and that the work to be performed by Synergy would be performed in North Carolina. (*Id*. at ¶ 7.)

On July 1, 2014, Synergy issued a Workers Compensation and Employers Liability Insurance Policy to UPC, effective for the period from July 1, 2014 to July 1, 2015. (*Id*. at ¶ 8.) UPC renegotiated a renewal of the policy in 2015, and again initiated conversations with Synergy's North Carolina employees in connection with the negotiations. (*Id*. at ¶ 10.) On July 1, 2015, Synergy issued a new Workers Compensation and Employers Liability Insurance Policy to UPC, which was intended to be effective for the period from July 1, 2015 to July 1, 2016. (*Id*. at ¶ 11.)

Pursuant to the 2014 Policy and the 2015 Policy (the "Policies"), Synergy insured UPC against losses resulting from workers compensation claims made by individuals employed through its employment staffing agency. Synergy advanced amounts relating to workers compensation claims and was to be reimbursed up to the per-occurrence deductible amount by UPC. Under the 2015 Policy, for example, the per-occurrence deductible amount was $30,000. (*Id*. at ¶ 12.)

UPC self-reported the payroll dollars of workers covered under the Policies on a monthly basis. UPC sent these reports to Synergy in North Carolina, which it used to determine the total amount of monthly premium due. UPC remitted payment for monthly premiums to Synergy in North Carolina. (*Id*. at ¶ 13.) Synergy also billed UPC monthly for deductible amounts that Synergy advanced on UPC's behalf during the prior month. UPC remitted payment for deductible amounts to Synergy in North Carolina. (*Id*. at ¶ 14.)

In addition to advancing funds to pay for workers compensation claims made against UPC, Synergy administered UPC's workers compensation claims from its North Carolina office. (*Id*. at ¶ 15.) To initiate a claim under the Policies, UPC first contacted Synergy in North Carolina to report the workplace incident and file the claim. Of the eleven (11) adjusters who service the workers compensation claims reported by UPC, ten (10) are located in Charlotte, North Carolina. One worked remotely. (*Id*. at ¶ 16.) UPC notified Synergy of its claims by phone, fax or email. Those notifications went directly to Synergy's North Carolina claims department and were assigned to one of Synergy's adjusters. Following the notification, UPC also completed a claim form to formally report the claim and sent that form to Synergy in North Carolina. For each of the claims, Synergy's adjuster then contacted UPC, the injured worker and the medical provider to confirm the details of the incident. (*Id*. at ¶ 17.)

For those claims determined to be compensable under the Policies, Synergy (a) monitored and managed the employee's medical treatment, (b) advanced payment for applicable medical bills, (c) worked with UPC to facilitate the employee's early return to work and (d) worked with UPC to identify medically approved alternative employment programs structured to the employee's individual needs and available accommodations. Synergy generally conducts all of this work from North Carolina. (*Id.* at ¶ 19.)

Synergy's North Carolina personnel frequently interacted with UPC personnel to administer UPC's workers' compensation claims. Most claims take months to resolve, and, depending on the severity of injuries associated with the claim, can take five or more years to resolve. Synergy is still processing and administering many of the claims made by UPC under the Policies. (*Id*. at ¶ 21.) As of August 31, 2016, UPC had reported 681 workers' compensation claims to Synergy under the policies. These 681 claims resulted in countless number of

interactions between Synergy's North Carolina employees and UPC's employees and workers as Synergy worked to administer and resolve the claims. (*Id.* at ¶ 22.)

Toward the end of the 2015 Policy Period, UPC stopped paying Synergy premiums and stopped reimbursing Synergy for the deductible amounts advanced on its behalf. Consequently, Synergy filed this lawsuit seeking recovery of amounts due under the Policies. UPC has moved to dismiss for lack of personal jurisdiction.

**II.     Discussion**

Where, as here, the court rules on a 12(b)(2) motion relying on the Complaint, briefs, and affidavits alone, without conducting an evidentiary hearing, the burden is on the plaintiff to make a *prima facie* showing that personal jurisdiction exists. *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). Moreover, all relevant pleading allegations must be construed in the light most favorable to the plaintiff. *Id.*

To meet its burden, Synergy must satisfy a two-step inquiry. First, Synergy must show that the North Carolina long-arm statute confers personal jurisdiction. Second, it must show that the exercise of personal jurisdiction over UPC would not violate the requirements of the Due Process clause of the Fourteenth Amendment. *See Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). The North Carolina Supreme Court has liberally construed the North Carolina long-arm statute to extend the full jurisdictional powers permissible under federal Due Process. *Vishay Intertechnology, Inc. v. Delta International Corp.*, 696 F.2d 1062, 1065 (4th Cir. 1982). Thus, the two-step inquiry merges into a single issue of whether UPC has the requisite minimum contacts with North Carolina to satisfy due process.

The Supreme Court has fashioned two tests for determining whether a defendant's contacts with the forum state are sufficient to confer personal jurisdiction. If the cause of action is unrelated to the defendant's activities in the forum state, plaintiff must prove that the contacts are "continuous and systematic" to support the exercise of "general jurisdiction" over the defendant. *Helicopteros Nationales de Colombia v. Hall*, 466 U.S. 408, 415-16 (1984). If the cause of action is related to or arises out of defendant's actions within the state, the plaintiff can establish more limited "specific jurisdiction." In determining whether due process permits the exercise of specific personal jurisdiction, a court is to consider: (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable. *Christian Sci. Bd.*, 259 F.3d at 216. With respect to the constitutional reasonableness of asserting jurisdiction, courts may evaluate "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal quotation marks omitted).

In this case, the Plaintiff Synergy is alleging that this Court has specific personal jurisdiction over UPC. With respect to the relationship between UPC's contacts with the forum and this lawsuit, there is no dispute that those contacts have led directly to this lawsuit: UPC sought workers compensation insurance from Synergy, a North Carolina resident, contacted Synergy frequently over a period of more than two years to file claims, and received the benefit of extensive services provided to it by Synergy from North Carolina. Synergy's claims arise

directly from this workers compensation insurance arrangement and the terms of the parties' agreements.

With regard to the constitutional reasonableness of asserting jurisdiction, the Court finds that these factors weigh in favor of exercising jurisdiction here. UPC, which has already retained North Carolina counsel, has presented no evidence as to whether litigating this straightforward payment dispute in North Carolina will result in any more than a minor inconvenience. And North Carolina has a substantial interest in offering a convenient and effective forum to its residents in which to litigate questions about work performed by its residents within the state.

The Court thus turns to the remaining factor - the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum. In the *Burger King* case, the Supreme Court held that a contractual relationship with a forum resident can support the exercise of personal jurisdiction over a non-resident defendant. In *Burger King*, the Florida- based franchisor sued its Michigan franchisee for breaching the parties' franchise agreement. The franchisee, who maintained no offices in Florida and had visited only once, contested personal jurisdiction in the state. In evaluating the defendant's challenge to jurisdiction, the Supreme Court observed that where a defendant "has created 'continuing obligations' between himself and residents of the forum, he has manifestly availed himself of the privilege of conducting business there." *Burger King*, 471 U.S. at 476 (internal citation omitted). "Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State." *Id*. Rather, in evaluating whether a contract supports the exercise of personal jurisdiction, a court must take a "highly realistic" approach that weighs several factors: "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id*. at 479.

6

Indeed, it is well-established that a non-resident who initiates contact with a forum resident and contracts for services which are to be provided from the forum has sufficient contacts with the forum to support the exercise of personal jurisdiction. In *Banc of America Securities LLC v. Evergreen International Aviation, Inc*., 611 S.E.2d 179, 185 (N.C. Ct. App. 2005), for example, the court credited evidence that "defendants solicited the [plaintiff] in North Carolina to perform services for it, [plaintiff] agreed to do so in North Carolina, and the contracts were substantially performed in North Carolina" in holding the exercise of jurisdiction proper. *See also Climatological Consulting Corp. v. Trattner*, 414 S.E.2d 382, 383 (N.C. Ct. App. 1992) (holding exercise of personal jurisdiction proper where the defendant "contacted plaintiff by telephone" and "over eighty percent of the services were performed in [the forum]"); *English & Smith v. Metzger*, 901 F.2d 36, 39-40 (4th Cir. 1990) (out-of-state resident was properly subject to personal jurisdiction in the forum by virtue of his fee-sharing agreement with a forum resident where out of state resident "initiated contact with [plaintiff] in Virginia, entered into contracts with [plaintiff] by virtue of action taken in Virginia, and carried on a continuing relationship with [plaintiff] in Virginia.").

UPC relies on the case of *Cameron-Brown Co. v. Daves*, 350 S.E.2d 111 (N.C. Ct. App. 1986) in arguing that the mere act of entering into a contract with a North Carolina resident and mailing payments to North Carolina does not constitute sufficient contacts for the exercise of personal jurisdiction. In *Cameron-Brown*, the court held that a South Carolina resident who was a party to an automobile insurance contract with a North Carolina corporation would not be subject to personal jurisdiction in North Carolina when sued for recovery of unpaid premiums. In reaching this holding, the court relied on the fact that the defendant's only connections to North Carolina were that the plaintiff prepared the policy in North Carolina and that the

defendant sent premium payments to the plaintiff in North Carolina. The *Cameron-Brown* case is readily distinguishable from this case. Workers compensation insurance differs from automobile insurance. Claims administration is a substantial function of a workers compensation insurer and creates a substantial and ongoing connection between the parties. Moreover, the most significant factor considered by the court in *Cameron-Brown* was the plaintiff insurance company's initiation of the relationship. In this case, Synergy's evidence is that UPC reached into the forum and solicited the business relationship with Synergy.

Synergy has submitted evidence that UPC solicited Synergy through UPC's agent, knowing that Synergy was located in North Carolina and would be performing its services from North Carolina. The parties entered into a long-term contractual relationship, and virtually all of the services that Synergy provided UPC—the administration of some 681 workers compensation claims and counting—were undertaken in North Carolina. The affidavit submitted by UPC in support of its motion to dismiss does not contradict these facts, but merely addresses UPC's lack of physical presence in North Carolina.

To defeat UPC's Motion to Dismiss, Synergy need prove only a *prima facie* case of personal jurisdiction and the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc.*, 2 F.3d at 59-60. Synergy has met its burden here. Its undisputed affidavit testimony establishes the substantial, ongoing relationship between the parties—initiated by UPC—for services to be performed by Synergy from its North Carolina office. UPC's hundreds of contacts with Synergy in North Carolina amply provide the minimum contacts necessary to support jurisdiction.

IT IS THEREFORE ORDERED that the Defendant's Motion to Dismiss is hereby DENIED.

Signed: December 13, 2016

Graham C. Mullen
United States District Judge